UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PATRICIA LYNN WILSON,<br><br>                    Petitioner,<br><br>    v.<br><br>CAROLYN W. COLVIN,[1]<br>Acting Commissioner of Social Security<br>Administration,<br><br>                    Respondent. | Case No. 3:12-cv-00483-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court for consideration is Petitioner Patricia Lynn Wilson's ("Petitioner") Petition for Review (Dkt. 1) of the Respondent's denial of social security benefits, filed September 18, 2012. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

---

[1] Carolyn W. Colvin is substituted for Michael J. Astrue. Colvin became the Acting Commissioner of Social Security Administration on February 14, 2013.

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on June 29, 2006, claiming disability due to back and knee pain that began June 29, 2006. This application was denied initially and on reconsideration, and a hearing was held on November 18, 2008, before Administrative Law Judge ("ALJ") Chester. ALJ Chester issued a decision finding Petitioner not disabled on December 19, 2008. Petitioner timely requested review by the Appeals Council, which on April 29, 2009, granted her request for review, and vacated and remanded the matter for further proceedings on remanded for a new hearing based upon several enumerated errors.

A second hearing was held on May 5, 2010, before ALJ Yellowtail. ALJ Yellowtail heard testimony from Petitioner and Mark McGowan, a vocational expert. On June 4, 2010, ALJ Yellowtail issued a decision finding Petitioner not disabled. Petitioner again timely requested review by the Appeals Council, which denied her request for review on July 18, 2012. Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the May 2010 hearing, Petitioner was forty-four years of age. Petitioner completed high school and a post graduate vocational program to obtain certification as a nurse assistant. Petitioner's prior work experience is minimal, with a seasonal job as a seed sorter.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of June 29, 2006. At step two,

**MEMORANDUM DECISION AND ORDER - 2**

it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's right hand osteoarthritis, left knee status post ACL repair, and right knee torn ACL, borderline intellectual functioning, and polysubstance abuse to be severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments, specifically listings 1.02 (major dysfunction of a joint or joints), 12.02 (organic mental disorders), and 12.05 (intellectual disability). If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. The ALJ determined Petitioner's RFC limited her to sedentary work involving simple, repetitive tasks, and that she was precluded from fingering with her right hand.

The ALJ found Petitioner had no past relevant work. If a claimant has no past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's RFC, age, education and work experience. At this step, the ALJ found Petitioner could successfully adjust to occupations such as surveillance system monitor, or information clerk, and is therefore not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §

**MEMORANDUM DECISION AND ORDER - 3**

1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER - 4**

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner contends ALJ Yellowtail erred at steps three and four. At step three, Petitioner asserts the ALJ erred by failing to properly evaluate whether Petitioner met or equaled Listings 12.02, 12.05(C), 1.02A, and 1.03. At step four, Petitioner asserts that the ALJ failed to incorporate all of Petitioner's limitations within her RFC, and did not properly evaluate Petitioner's credibility or the lay witness testimony of Petitioner's significant other, which was submitted in writing.

**1.    Whether Petitioner Meets or Equals a Listed Impairment**

The ALJ found that Petitioner's impairments did not meet or equal any listing. Specifically, the ALJ found that Petitioner's impairments did not meet or equal Listing12.02, 12.05(C), and 1.02A. Petitioner argues also that the ALJ failed to consider Listing 1.03 in his analysis, which was error.

The standard for meeting a listing is high. A claimant bears the burden of producing medical evidence to establish all of the requisite medical findings that her impairments meet or equal any particular listing. *Bowen v. Yuckert*, 482 U.S 137, 146, n. 5 (1987). If a claimant meets or equals a listed impairment and satisfies the twelve month duration requirement, the claimant is

**MEMORANDUM DECISION AND ORDER - 5**

presumed disabled regardless of age, education and work experience. 20 C.F.R. §
404.1520(a)(4)(iii), (d).

If the claimant alleges equivalence to a listing, the claimant must proffer a theory,
plausible or otherwise, as to how her combined impairments equal a listing. *See Lewis v. Apfel*,
236 F.3d 503, 514 (9th Cir. 2001). An impairment, or combination of impairments, is medically
equivalent to a listing "if it is at least equal in severity and duration to the criteria of any listed
impairment," considering "all evidence in [the] case record about [the] impairment(s) and its
effects on [the claimant] that is relevant…." 20 C.F.R. § 404.1526(a), (c). Further, equivalence
depends on medical evidence only; age, education, and work experience are irrelevant. *Id*. at §
404.1526(c). Finally and critically, "the claimant's illnesses 'must be considered in combination
and must not be fragmentized in evaluating their effects.'" *Lester v. Chater*, 81 F.3d 821, 829
(9th Cir. 1995) (quoting *Beecher v. Heckler*, 756 F.2d 693, 694-95 (9th Cir. 1985)).

**A.      *Listing 12.05, Intellectual Disability***

Petitioner argues that she has proven medical equivalence to Listing 12.05 because she
meets the C criteria for Mental Retardation based upon her low IQ score and diagnosis of
borderline intellectual functioning. Respondent argues that Petitioner did not demonstrate that
she meets the diagnostic criteria in the introductory paragraph of Listing 12.05, which
Respondent argues requires a diagnosis of mental retardation prior to age 22, or medical findings
showing her impairment equals Listing 12.05C.

Listing 12.05 provides a two-prong test for determining whether a claimant suffers from
Intellectual Disability. First, there must be evidence of "significantly subaverage general
intellectual functioning with deficits in adaptive functioning initially manifested ... before age
22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, ¶ 12.05. If the evidence shows onset before age 22, the

**MEMORANDUM DECISION AND ORDER - 6**

second prong can be satisfied in four distinct ways described in subparagraphs A through D. *Id*. Petitioner contends she medically equals subparagraph C, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. at ¶ 12.05(C).

The United States Court of Appeals for the Ninth Circuit has not yet ruled on the issue of whether a diagnosis of mental retardation is required, but the Eighth Circuit and several district courts within the Ninth Circuit, including the District Court of Oregon, have determined that a formal diagnosis of mental retardation is not required to meet Listing 12.05C. *Pedro v. Astrue*, 849 F.Supp.2d 1006, 1010 (D. Or. 2011) (citing references omitted.) Therefore, Petitioner need not, as Respondent argues, have a formal diagnosis of mental retardation.

Nevertheless, although clinical IQ tests administered prior to age 22 or a formal diagnosis of mental retardation are not required, Petitioner must demonstrate adaptive functioning deficits appearing prior to age 22, such as "attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history." *Pedro*, 849 F.Supp.2d at 1012. *See also Smullin v. Colvin*, No. 1:12–cv–00414–CWD, 2013 WL 5424009 *4 (Sept. 26, 2013) (finding school records prepared prior to age 22 demonstrated significant deficits).

On January 28, 2010, Dr. Gregory Cole, Ph.D., performed an intellectual assessment, and found Petitioner exhibited a full scale IQ score of 67. Petitioner's physical impairments include instability in both knees caused by a repaired ACL in the left knee, and a torn ACL in the right knee. She exhibits also severe osteoarthritis in her right hand, leaving her unable to finger a keyboard or make a fist. The ALJ noted all of these physical impairments when he considered listing equivalence. But the ALJ did not find the evidence sufficient to meet the introductory

**MEMORANDUM DECISION AND ORDER - 7**

paragraph, because Petitioner was not in special education classes in high school, maintained a "B" average, and she successfully attended Interface Computer School and Spokane Community College, as well as obtained certification as a nurse assistant, without special education or accommodation.

Petitioner argues there is evidence that suggests adaptive functioning deficits appearing prior to age 22, such as Petitioner's unusually long time frame to complete her high school education. However, there is substantial evidence supporting the decision of the Commissioner, and it is not for the Court to second guess the ALJ's determination. The record in this case does not provide sufficient circumstantial evidence demonstrating onset of Petitioner's intellectual impairment prior to age 22. Petitioner did not meet her burden to establish equivalence to Listing 12.05C.

**B.**     *Listing 12.02*

Petitioner argues she established she meets Listing 12.02, because she meets both the part A and part B criteria. To be found disabled within the meaning of Section 12.02, which pertains to organic mental disorders, appellant must establish a "loss of specific cognitive abilities or affective changes" as described in Subdivision A *and* that condition must result in at least two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Part 404, Subpt. P., App. 1, ¶ 12.02.

**MEMORANDUM DECISION AND ORDER - 8**

The ALJ determined that Petitioner met the criteria for loss of cognitive abilities under Subsection A, but that she did not meet or equal at least two of the Subdivision B criteria required for a finding of disability. Petitioner argues that this determination by the ALJ is not supported by substantial evidence.

The ALJ considered Dr. Cole's psychological assessment and treatment records when he concluded there was insufficient evidence in the record establishing Petitioner met or equaled the severity of the part B criteria of Listing 12.02. Specifically, the ALJ noted that Petitioner described her activities of daily living to Dr. Cole, as well as noted her activities were described elsewhere in the record, and her activities did not suggest she had marked restrictions in her activities of daily living; maintaining social functioning; or maintaining concentration, persistence or pace. Nor did the ALJ find any repeated episodes of decompensation noted anywhere in the record.

Petitioner, on the other hand, cites the record evidence provided by her significant other, who described caring for Petitioner, and opined that Petitioner has trouble concentrating and remembering, does not socialize, and spends much of her time alone, in support of her contention of error.

But a review of Dr. Cole's assessment indicates Petitioner reported completing household chores on a regular basis, and she self-reported that she did a "good job." She reported also that she cooks daily, can take a bus by herself, do her own laundry, go grocery shopping once a month without a list to remember items, and can manage her own money. Petitioner reported attending church and "seeing friends on a daily basis." (AR 525.) Petitioner was able to complete most of the tasks given to her by Dr. Cole, and she completed the testing session. Although Dr. Cole noted "problems with attention and

**MEMORANDUM DECISION AND ORDER - 9**

concentration," nowhere else in the record is there evidence of severe deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner; and, her ability to take care of herself and her household does not support a finding of either A(1) or A(2), either of which would be required to satisfy the part B criteria.

Further, Petitioner completed a Function Report, and on it, she described caring for her mother, preparing meals, doing housework and other household activities, and that she needs no reminders to take care of her own needs and household duties. Petitioner reported also that she follows written and spoken instructions "very well," and similarly reported handling stress and changes in routine "very well." (AR 242-248.)

The above evidence in the record considered by the ALJ directly contradicts the evidence Petitioner cites in support of her argument that she meets at least two of the Part B criteria of Listing 12.02. The ALJ's determination that Petitioner did not meet nor was medically equivalent to Listing 12.02 is supported by substantial evidence and will be affirmed.

### C.    *Listings 1.02A and 1.03*

The Court next turns to Petitioner's challenge to the ALJ's determination that her physical impairments did not meet nor were equivalent to Listings 1.02A and 1.03. The ability to ambulate effectively is a component of both listings, and Petitioner argues that the ALJ failed to adequately address Petitioner's inability to ambulate effectively when determining Petitioner did not meet or equal listing 1.02A. Although the ALJ did not consider Listing 1.03 in his analysis, because ineffective ambulation is a required component of Listing 1.03, the ALJ's analysis would apply with equal force to a

**MEMORANDUM DECISION AND ORDER - 10**

consideration of that listing.

Listing 1.02A requires gross anatomical deformity, including instability, along with chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints, with involvement of one major peripheral weight-bearing joint resulting in the inability to ambulate effectively. Similarly, Listing 1.03 requires evidence of reconstructive surgery of a major weight-bearing joint, with the inability to ambulate effectively, and the failure to return to effective ambulation within twelve months of onset. 20 C.F.R. Part 404, Subpt. P., App. 1, ¶1.02A, 1.03.

The inability to ambulate effectively is defined as:

an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Part 404, Subpt. P., App. 1, ¶ 1.00(B)(2)(b)(1), (2).

Petitioner rests her contention that she meets Listing 1.02 or 1.03 on the ALJ's RFC

**MEMORANDUM DECISION AND ORDER - 11**

limitation to "avoid walking on rough or uneven surfaces." (Dkt. 15 at 12; AR 23.)  One of the examples of inability to ambulate effectively in 1.00(B)(2)(b)(2) is "the inability to walk a block at a reasonable pace on rough or uneven surfaces." On this basis, and without reference to any medical opinion or medical findings, Petitioner contends that she satisfies the ineffective ambulation requirements of both 1.02 and 1.03.[2] Respondent argues that Petitioner did not establish that she met the definition of ineffective ambulation, because there was no evidence in the record regarding the need for assistive walking devices, as required in the rule.

The Court, however, is limited to the ALJ's findings, which were cursory at best. In his determination, although the ALJ noted Petitioner's bilateral knee instability and right hand deformity, he simply stated that no physician who treated or examined Petitioner, or reviewed Petitioner's records, opined that her joint disorders satisfy a Medical Listing, either individually or in combination. The ALJ failed to discuss Petitioner's ability to ambulate effectively in his determination that Petitioner failed to meet Listing 1.02, or by extension, 1.03.

But Petitioner contends that the finding of an inability to walk on rough or uneven surfaces constitutes a per se conclusion that Petitioner cannot ambulate effectively within the meaning of Section 1.00(B)(2)(b)(1). Although the ALJ stated in his RFC assessment that Petitioner should avoid walking on rough or uneven surfaces, it does not automatically follow

---

[2] Petitioner argues also that her lumbar pain, when considered together with her knee impairments, are equivalent in combination to Listing 1.04C, disorders of the spine, because she cannot ambulate effectively. (Pet. Brief, Dkt. 15 at 13.) Listing 1.04C requires evidence of "compromise of a nerve root . . . or the spinal cord," with evidence of lumbar spinal stenosis resulting in pseudoclaudication, *established by findings on medical imaging studies*, and resulting in an inability to ambulate effectively. Petitioner again relies upon her argument that she cannot ambulate effectively. But there is no medical evidence in the record that Petitioner has a spinal disorder resulting in lumbar spinal stenosis and pseudoclaudication. Medical imaging of Petitioner's spine from September 2, 2009, showed "no acute abnormality" and only mild to moderate degenerative changes at her thoracic and lumbar spine. (AR 494 – 495.)

**MEMORANDUM DECISION AND ORDER - 12**

that the limitation of Petitioner's ambulation rises to the level required by Section

1.00(B)(2)(b)(1), or that Petitioner met her burden of presenting sufficient objective medical

evidence supporting equivalence of her condition to either Listing 1.02 or 1.03. *See Bacom v.*

*Colvin*, 2013 WL 5372865 *6 (E.D. Cal. Sept. 25, 2013) (finding confinement to a wheelchair as

a result of the claimant's obesity did not constitute a per se conclusion of inability to ambulate

effectively).  The reference to avoiding walking on uneven surfaces does not, standing alone,

compel a finding of inability to ambulate effectively or finding Listing 1.02 or 1.03 equivalence.

*Bacom*, 2013 WL 5372865 *6.

The Court must consider, however, whether the ALJ's failure to discuss Petitioner's

ability to ambulate effectively was "inconsequential to the ultimate nondisability determination"

in the context of the record as a whole. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

Here, the ALJ failed to articulate any findings regarding Petitioner's ability to ambulate

effectively, despite finding that other criteria of Listing 1.02 were satisfied. But, in determining

that Petitioner did not meet Listing 1.02, the ALJ necessarily considered Petitioner's ability to

ambulate effectively, which the ALJ discussed at length elsewhere in his determination.

Specifically, the ALJ relied upon Dr. Bjornstad's September 25, 2006 evaluation, in which Dr.

Bjornstad noted Petitioner had good strength and range of motion in both legs, and that both legs

had good tone. Dr. Bjornstad's physical assessment did not preclude all work, but simply limited

Petitioner from walking on uneven ground. Dr. Bjornstad noted that Petitioner could walk

without a brace, and "has a fairly well balanced gait." (AR 363.) Thus, other than restricting her

from climbing stairs and precluding her from walking on uneven ground, Dr. Bjornstad made no

finding after examination that Petitioner was unable to ambulate effectively as described in the

regulations.

**MEMORANDUM DECISION AND ORDER - 13**

The ALJ noted elsewhere in his determination Petitioner's statements about her ability to walk without assistive devices, and considered that she could do chores at an even greater than sedentary functional capacity. (AR 25.) Although the ALJ failed to elaborate on what those chores were, Petitioner testified at the hearing that she did not use a cane or crutches, and said she could walk one block if she took a rest. (AR 49.) Petitioner also described grocery shopping by herself and taking a bus for transportation without assistance. (AR 50.) These chores as Petitioner described them fit within the ALJ's characterization.

Because the ALJ validly considered all of the limitations described by Petitioner within his determination, the Court is confident that the ALJ's failure to discuss Petitioner's ability to ambulate in great detail did not alter the ultimate nondisability determination. Plaintiff points to no objective medical evidence to establish her inability to ambulate effectively. And Dr. Bjornstad, an examining physician, did not make findings of such severity to equate Petitioner's physical impairments with Listing 1.02 or 1.03 based upon ambulation.

Accordingly, the ALJ's error was harmless. The ALJ's determination that Petitioner does not meet or equal Listing 1.02 or, by extension, Listing 1.03, is supported by substantial evidence. The Court upholds the ALJ's decision as supported by substantial evidence that Petitioner's impairments, either alone or in combination, did not meet or equal a listed impairment.

## 2. Step Four, RFC

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, *i.e.*, whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). A claimant's residual

**MEMORANDUM DECISION AND ORDER - 14**

functional capacity is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id*. Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss*, 427 F.3d at 1217. The ALJ need not consider or include alleged impairments that have no support in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–64 (9th Cir. 2000).

Among other restrictions, the RFC determination was that Petitioner could perform sedentary work, and would be able to perform simple repetitive tasks. (AR 23.) The ALJ included the condition that Petitioner could perform simple, repetitive tasks in his hypothetical to the vocational expert. (AR 70.) Petitioner contends the RFC assessment did not incorporate all limitations imposed by Petitioner's impairments, specifically Petitioner's cognitive limitations in concentration and slow mental processing, her lack of ability to respond appropriately to work situations and to changes in a routine work setting, and the ALJ's prior finding of a marked limitation in maintaining concentration, persistence and pace. (*See* AR 22.) Petitioner argues that the ALJ's characterization that Petitioner could perform simple repetitive tasks does not take into account Petitioner's inability to perform those tasks over the course of a work day and work week due to her cognitive limitations.

In *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001), the court considered whether a hypothetical question that included a conclusion that a petitioner was able to do "simple, routine, repetitive work" accounted for the finding of borderline intellectual functioning. Also in the record were notes that petitioner often had deficiencies in concentration, persistence or pace,

**MEMORANDUM DECISION AND ORDER - 15**

but that petitioner could sustain sufficient concentration and attention to perform simple, repetitive, and routine cognitive activity. *Howard*, 255 F.3d at 582. Based upon that record, the court upheld the ALJ's findings, holding that a hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captured the petitioner's deficiencies in concentration, persistence or pace. *Id.*

Dr. Cole's report, upon which the ALJ relied, noted Petitioner's problems in the areas of attention and concentration, but also noted that Petitioner "was able to *sustain* simple routine tasks," and had "no problems completing a simple multiple-step task." (AR 528.) (emphasis added.) Dr. Cole opined that Petitioner's slow mental processing, intellectual deficits, and pain would be primary factors "which would impact her overall level of vocational success." (AR 528.) But, the ALJ found that Petitioner would have "marked" limitations in maintaining concentration, persistence and pace. (AR 22.) Nevertheless, the ALJ noted also Petitioner's successful completion of high school with a "B" average, completion of the certification requirement to become a nurse assistant, and attendance at computer school and community college. (AR 22-23.) Petitioner testified she would have no trouble handling changes in routine, another factor the ALJ considered. (AR 23.)

Based upon this record, the ALJ's RFC assessment adequately captured Petitioner's deficiencies in concentration, persistence or pace. *See Howard*, 255 F.3d at 582, *quoted in Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding the ALJ's characterization that the claimant can carry out simple tasks adequately incorporated the concepts of concentration, persistence, and pace). The portion of the ALJ's determination

**MEMORANDUM DECISION AND ORDER - 16**

describing Petitioner as having "marked" deficiencies in concentration, persistence and[3] pace was discussed in the context of the severity of Petitioner's condition as it related to Listing 12.02 and 12.05, and was not part of the functional capacity evaluation. *See Id.* The Court therefore finds that the ALJ's RFC determination is supported by substantial evidence in the record, and adequately captured Petitioner's cognitive deficiencies.

### 3. Credibility

When evaluating Petitioner's credibility, the ALJ stated that Petitioner's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Petitioner argues the ALJ used circular reasoning to evaluate Petitioner's credibility. Respondent contends, however, that the ALJ provided adequate support later within the opinion for his credibility determination. Petitioner further argues that the ALJ's assumption that Petitioner's ability to perform household chores indicated her ability to work on a full time basis was error, citing *Orn v. Astrue* , 495 F.3d 625, 639 (9th Cir. 2007). Petitioner's arguments in this area are limited to her physical disabilities. Pet. Brief at 17 (Dkt. 15.)

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

---

[3] Petitioner argues that the use of the word "and," versus "or," is significant in this context, and means Petitioner was limited in all three areas simultaneously. Pet. Brief at 14 (Dkt. 15.) The Court finds that the substitution of the conjunction "and" in this context does not alter the meaning of the phrase as it is commonly used in disability determinations. *See* 3 Soc. Sec. Law & Prac. § 42:134 (using the conjunctions "and" and "or" interchangeably, and noting that the concepts are not necessarily discrete---concentration can be measured by the claimant's ability to work at a consistent pace). In other words, because the concepts blend together and overlap to a degree, the conjunction used ("and" instead of "or") is not material.

**MEMORANDUM DECISION AND ORDER - 17**

The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of

**MEMORANDUM DECISION AND ORDER - 18**

symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

Here, the ALJ adequately explained the support for his conclusion that the intensity, persistence and limiting effects of Petitioner's symptoms were not credible to the extent they were inconsistent with his residual functional capacity assessment. The ALJ credited Petitioner's testimony about her physical pain and symptoms to the extent supported by the objective medical evidence, but discredited Petitioner's description that the pain was excessive to the point of being disabling. (AR 24-25.) In doing so, the ALJ evaluated Petitioner's statements to Dr. Cole documented in the psychological testing report; considered Petitioner's substance abuse history; and, analyzed Dr. Bjornstad's physical capacity report. In Dr. Bjornstad's report, she observed, based upon clinical examination, that Petitioner could lift up to 20 pounds occasionally and 10 pounds frequently, should not be required to go up and down stairs, or to crawl, kneel or be on her knees; and her right hand damage would preclude fine motor skills. The ALJ noted that Petitioner's medical treatment records as a whole were consistent with Dr. Bjornstad's assessment. All of the physical limitations described by Dr. Bjornstad were incorporated into the ALJ's RFC determination.

Further, the ALJ discussed Petitioner's ability, which was self-reported, to perform household chores on a regular basis, and that some chores required an even greater than sedentary functional capacity. Although the ALJ did not elaborate in detail, the ALJ noted that Petitioner described these chores to Dr. Cole, and further noted that she described her daily activities elsewhere in the record. A review of the record, as discussed above, indicates that Petitioner self-reported and testified that she could clean her house by herself (AR 49), could

**MEMORANDUM DECISION AND ORDER - 19**

cook a meal by herself (AR 50), grocery shop by herself (AR 50, 53), and write letters (AR 51),

as well as clean, vacuum, and do the laundry (AR 53). She reported that she dusted every two

days, did her laundry once a week, mopped her house every two days, and washed dishes every

day, and that she needed no help to do these chores. (AR 262.) According to Dr. Cole, Petitioner

reported that she mopped daily, and vacuumed three times per week. (AR 525.) Petitioner

reported also that she regularly went to the library, store, and church, and needed no one to

accompany her. (AR 264.) Also, she was able to take the bus by herself. (AR 525.) The ALJ

noted the aforementioned inconsistencies in the record between what Petitioner described to her

doctors and self-reported, compared to her description at the hearing of disabling pain.

An ALJ is not required to believe every allegation of disabling pain. *Fair v. Bowen*, 885

F.2d 597, 603 (9th Cir. 1989). The ALJ is entitled to conclude that Petitioner's pain does not

prevent her from working if she is able to perform household chores and other activities that

involve many of the same physical tasks as a particular job. *Fair*, 885 F.2d at 603. Although

many home activities are not easily transferable to the workplace, if the claimant is able to spend

a substantial part of her day engaged in pursuits involving the performance of physical functions

that are transferrable to a work setting, a specific finding as to this fact may be sufficient to

discredit an allegation of disabling excess pain. *Id.*

The ALJ did not discredit all of Petitioner's pain symptoms. The RFC determination

considered Petitioner's knee pain, back pain, shoulder pain, and difficulty concentrating. What

the ALJ discredited were Petitioner's statements that her pain prevented her from working at all,

based upon the level of daily activity she engaged in and described to others. The facts here are

distinguishable from those in *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007), where the court

rejected the ALJ's conclusion that the claimant's daily activities were grounds for an adverse

**MEMORANDUM DECISION AND ORDER - 20**

credibility finding. There, however, petitioner's daily activities consisted of reading, watching television, and coloring in coloring books, a marked contrast to Petitioner's activities, which involved tasks requiring her to be on her feet, walk, use her arms and hands, and follow simple instructions or complete a series of tasks (cooking), and she did these physical tasks regularly every day or every week (persistence).

Accordingly, the ALJ's conclusion that Petitioner's complaints about the severity of her pain were not entirely credible based upon her activity level is supported by substantial evidence.

**4.    Lay witness testimony**

Petitioner argues the ALJ erred in rejecting the written testimony provided by Petitioner's significant other, Mr. Reigard. (AR 297.) He testified that Petitioner cannot walk down a street, her knees hurt when she walks, and that she needs assistance from him while walking. He further stated that Petitioner has trouble concentrating and that, when fixing dinner, Petitioner needs the instructions repeated; also, she becomes confused easily; does not socialize; has trouble dealing with change; and seems depressed. (AR 297-98.) The ALJ rejected Mr. Reigard's statements because there was "such a disparity between the level of functioning the claimant herself described to Dr. Cole and the limited functioning described by Mr. Reigard that, in the absence of a credible explanation," the ALJ accorded little weight to observations different from Petitioner's own description. (AR 25.) The ALJ stated also that, to the extent Mr. Reigard noted difficulty in walking and climbing stairs, as well as with concentration, those limitations were incorporated into the RFC determination.

An ALJ must consider evidence from sources other than the claimant, including family members and friends, to show the severity of a claimant's impairment.  20 C.F.R. § 404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Lay testimony

**MEMORANDUM DECISION AND ORDER - 21**

regarding a claimant's symptoms constitutes competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to the witness for doing so.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal citations omitted)); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999).  Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities.  *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001). In rejecting lay testimony, "the ALJ need not cite the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted, even though the ALJ does 'not clearly link his determination to those reasons,' and substantial evidence supports the ALJ's decision." *Holzberg v. Astrue*, No. C09-5029BHS, 2010 WL 128391 at *11 (W.D. Wash. Jan. 11, 2010) (citing *Lewis*, 236 F.3d at 512).

Petitioner's claim of error is without merit. The ALJ noted Petitioner's statements to Dr. Cole, as well as evidence elsewhere in the record where Petitioner described her activities, and those statements contradicted Mr. Reigard's characterization. The ALJ cited the contradiction between what Mr. Reigard stated and what the Petitioner herself reported to Dr. Cole and elsewhere as justification for according Mr. Reigard's testimony little weight. Petitioner's prior inconsistent statements are a sufficient reason germane to Mr. Reigard for rejecting his testimony. The Court finds substantial evidence supports the ALJ's conclusion, and it is free from legal error.

**5.    Motion to File Surreply**

On April 11, 2013, Respondent requested permission to file a surreply because of new arguments raised in Petitioner's reply memorandum. (Dkt. 19.) Petitioner filed an objection. (Dkt. 20.) Respondent contends that Petitioner raised the argument for the first time in her Reply

**MEMORANDUM DECISION AND ORDER - 22**

Brief that the ALJ did not comply with SSR 96-9p because the ALJ did not ask psychological consultant Gregory Cole, Ph.D., whether Petitioner met or equaled any listing. This argument was not made in Petitioner's opening brief. Respondent requests permission to file a surreply to address this new argument.

The Court denies the motion to file a surreply. The Court, which is sitting in an appellate capacity, need not consider arguments raised for the first time in a reply brief, and therefore deems the new argument by Petitioner waived. *Quan v. Computer Sciences Corp.*, 623 F.3d 870, 878 n.4 (9th Cir. 2010); *U.S. ex. rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 n.1 (9th Cir. 2009) (arguments raised on appeal for the first time in a reply brief are waived); *Daulton v. Astrue*, 2:10-cv-443-REB, 2011 WL 4526745 *4 n.3 (D. Idaho Sept. 28, 2011) (refusing to consider arguments not raised in the petitioner's original briefing).

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

Dated: **December 02, 2013**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**